IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ERIC ROSHAUN THURAIRAJAH                                                                                                PLAINTIFF

vs.                                                       No. 16-2123

THE CITY OF FORT SMITH,                                                                         DEFENDANT
ARKANSAS, et al.

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE
TO SEPARATE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Standard of Review**

Rule 50 of the Federal Rules of Civil Procedure (hereinafter designated as "F.R.C.P.") governs motions for judgment as a matter of law. On appeal, the appellate court reviews the granting of judgment as a matter of law as it does summary judgment - that is, *de novo*, applying the same standard as the district court. *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir. 1996). Judgment as a matter of law is appropriate only when the nonmoving party fails to present enough evidence to permit a reasonable jury to decide in his favor. [The appellate court does] not judge witnesses' credibility, [it gives the nonmoving party the benefit of all reasonable inferences, and [it looks] at the evidence in the light most favorable to [the nonmoving party]. *Ibid*.

When entertaining a motion for judgment as a matter of law, the court should review all evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). If a court analyzes such a motion after trial, the court must assume that the jury resolved all conflicts of evidence in favor of the nonmoving party, assume as true all facts which the prevailing party's evidence tended to prove, and deny the motion, if in light of the foregoing, reasonable jurors

could differ as to the conclusion that could be drawn from the evidence. *Walsh v. National Computer Systems, Inc.*, 332 F.3d 1150 (8th Cir. 2003).

## Summary of Facts

In this case exists a veritable plethora of disputed facts. The occurrence in question took place in Sebastian County, Arkansas, on the afternoon of June 2, 2015. Plaintiff, (hereinafter referred to as Mr. Thurairajah), a young man of east-Indian decent (Plaintiff's Ex. A, Depo of Plaintiff, p. 11 ¶ 19), drove past Separate Defendant Trooper Lagarian Cross (hereinafter, Defendant Cross, or simply, the Defendant), a police officer, while Defendant Cross was standing outside talking to a young woman; no one else was present. Id. at 37, ¶¶13-20. As Mr. Thurairajah drove past the Defendant, Mr. Thurairajah yelled, "Fuck you," (Id. at pp. 38 ¶19- 39 ¶10) from his car as he continued to drive away at 35 miles per hour, in the direction of a nearby gas station. Id. at 41, ¶9-14  Mr. Thurairajah was driving a 2008 Chevrolet Cobalt automobile. Defendant Cross's Exhibit E, Police Report. He was alone and had no passengers. Plaintiff's Exhibit A, at p. 58 ¶10-11. Plaintiff estimates that, across five lanes of traffic, he was approximately fifty (50) yards away from Defendant when yelling out to him. Plaintiff's Exhibit A, at 40, ¶2-14.

It was approximately 7:13pm, just thirteen (13) minutes after Defendant Cross's radio transmission that he was starting his shift. Plaintiff's Exhibit C, Radio Transmission Log. Defendant Cross says he pulled over a minivan in what he claims was a "routine traffic stop," contrary to Plaintiff's recollection, and missing from the dispatch records. Defendant's Exhibit D at ¶ 2, Plaintiff's Exhibit C. Defendant Cross states that he had stopped a "younger adult female who had young children with her." Defendant's Exhibit D at ¶ 3. According to Defendant Cross, as he approached the minivan, but before he could obtain any information from

the driver, Defendant Cross states that he "heard an individual yell 'Fuck You' extremely loud [sic] as the individual drove passed [sic]." Id. at ¶ 4.  The Defendant claims that upon seeing the alleged reaction of the minivan's driver and passengers – he did not have personal knowledge of their actual state of mind and did not ask them – he simply assumed that the audience was "alarmed,"—and Defendant believed that Mr. Thurairajah had committed a crime and must be arrested. Id. at ¶ 5-7.  The Plaintiff asserts that the Defendant will not be allowed to introduce evidence of other witnesses's states of mind at trial, only his interpretation of their alleged reactions. The Defendant admits that he immediately decided to leave the alleged traffic stop with the minivan to stop Mr. Thurairajah. Id. at ¶ 7.  Mr. Thurairajah had not committed any crime, and was not suspected of having committed any other crimes.  Plaintiff's Statement of Undisputed Material Facts, at ¶XX.  At the scene of the arrest, Defendant Cross violently handcuffed Mr. Thurairajah and unnecessarily and brutally threw him into the back of the police car, savagely slamming the car door on Mr. Thurairajah's legs.  Plaintiff's Exhibit A at 47, ¶ 1-25.  Defendant Cross then had Mr. Thurairajah's vehicle towed.  Id. at 49, ¶21; 50, ¶6-8.

      After illegally arresting Mr. Thurairajah, Defendant Cross admits he took Mr. Thurairajah to the Sebastian County Jail, where Defendant Cross also admits he subjected Mr. Thurairajah to inhumane conditions.  DSUMF, p. 5 ¶¶40-42.  Defendant Cross was not there for merely a "few minutes," but was there long enough to banter and laugh with other police officers about his unlawful arrest and finish up his paperwork, and within eyeshot of the Plaintiff for most of the time.  Plaintiff's Exhibit A, pp. 51-56, notably pp. 54 ¶18 – 55 ¶10.  Defendant Cross does not deny that he subjected Mr. Thurairajah to putrid and insanitary conditions at the jail, including but not limited to:  a broken toilet with feces and urine all over the floor, and he and multiple detainees were held there, but only Mr. Thurairajah was held without protection the protection of

socks and shoes. Defendant's Statement of Undisputed Material Facts, p. 5, ¶¶40-42; Plaintiff's Exhibit D, Plaintiff's Response to First Set of Interrogatories, Nos. 2, 4, 6, 7, 9, 10, 14; Plaintiff's Exhibit A, at pp. 56, ¶20 – 57, ¶12. This speaks directly to this particular officer's lack of judgment and training, and he is responsible, both directly and proximately, for Mr. Thurairajah's extreme mistreatment while at the county jail. As a result of this incident, Plaintiff was prescribed medication that he had never been prescribed before due to newly diagnosed mental conditions. See Defendant's Exhibits C, pp. 12 and F pp. 3.

## Argument

The crux of Mr. Thurairajah's case – whether or not Defendant Cross is entitled to qualified immunity - rests upon material facts, which are contentiously in dispute. The first disputed fact is that Defendant Cross violated Mr. Thurairajah's federal rights when Defendant Cross illegally arrested Mr. Thurairajah. The second disputed fact is that Defendant Cross violated Mr. Thurairajah's clearly defined rights under the First, Fourth, Fifth, and Fourteenth Amendments. These two disputed issues should be decided in favor of the plaintiff by the judge as a matter of law or in the alternative it is a question of fact as to whether the Trooper's actions were reasonable. Once the Plaintiff prevails on these issues as a matter of law, only the issue of damages should be left to the jury, therefore Mr. Thurairajah's case must survive summary judgment. Defendant Cross's reckless violation of Mr. Thurairajah's civil rights and Defendant Cross's inhumane and punitive treatment of Mr. Thurairajah as a pretrial detainee, and resulting punitive damages, are questions for the jury.

Defendant Cross is not entitled to qualified immunity, and therefore Defendant's Motion for Summary Judgment should be dismissed. Because a finding of qualified immunity must be made after an analysis of the above-stated issues that are issues of law only being disputed by the

Defendant, Plaintiff must win on the issue of qualified immunity as a matter of law, and Mr. Thurairajah should not be denied his day in court.

> **I.  Defendant Cross is Not Entitled to Qualified Immunity as to Plaintiff's Federal Claims**
> **A.  Defendant Cross's Arrest-Related Constitutional Violations Are Valid Because Defendant Cross Had No Probable Cause to Stop and Arrest Plaintiff Because Plaintiff's First Amendment Claim Is Clearly Established**

The most disputed issue of material fact in this case is whether or not the Defendant illegally arrested Mr. Thurairajah. Contrary to the Defendant's opinion, Mr. Thurairajah argues that the arrest was indeed illegal because Defendant Cross apprehended Mr. Thurairajah with no justifiable probable cause. As a result, the detention, arrest, and subsequent search forced upon Mr. Thurairajah were in violation of Mr. Thurairajah's rights under the Fourth and Fourteenth Amendments of the United States Constitution, and parallel state law claims.

It is well-settled that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Houston v. Hill, 482 U.S. 451 (1987). The United States Supreme Court, in Houston v. Hill, struck down a city ordinance which permitted police officers to arrest an individual for "wilfully or intentionally interrupt[ing] a city policeman . . . by verbal challenge during an investigation." Id. at 454. The Court in its opinion made a detailed examination of protected speech under the First Amendment, in the context of arrests by law enforcement officers. In Terminiello v. Chicago, 337 U.S. 1 (1949), for example, the Supreme Court had stated that:

> Speech is often provocative and challenging . . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises for above public inconvenience, annoyance, or unrest.

Cited in Houston v. Hill, at 461.

In Lewis v. City of New Orleans, 415 U.S. 130 (1974), the Supreme Court again vacated a conviction and invalidated a city ordinance, under which that defendant had been convicted for yelling obscenities at a police officer who had asked the defendant's husband for his driver's license. Houston v. Hill, cited supra. In Houston v. Hill, the Supreme Court concluded that:

> Today's decision reflects the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint . . . . [t]he First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive.

Id. at 471.

In Buffkins v. Omaha, 922 F.2d 456 (1991), the Eighth Circuit Court of Appeals held that the District Court should have found, as a matter of law, that officers did not have probable cause to arrest Buffkins for calling a police officer an "asshole." Id. at 472. Referring to Houston v. Hill, the Eighth Circuit stated that:

> [T]he "fighting words" doctrine may be limited in the case of communication addressed to properly trained police officers because police officers are expected to exercise greater restraint in their response than the average citizen.

Buffkins, cited supra.

In the Western District of Arkansas, the Honorable H. Franklin Waters held, in Nichols v. Chacon, 110 F.Supp.2d 1099 (2000), that an arrestee's display of his middle finger in an upward gesture at a police officer did not constitute fighting words and did not create probable cause for the police officer to arrest or cite the arrestee for disorderly conduct, as defined by the Arkansas statute. Id. at 1110. In his opinion, Judge Waters cited Chaplinsky, Lewis v City of New Orleans, Terminiello, Buffkins, and Houston v. Hill, all cases relevant to Mr. Thurairajah's argument. He further cited Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990), in which an arrest was found to be without probable cause where an arrestee had directed "a series of expletives and an

'obscene' hand gesture at a police officer, Gilbert Aguiler." Duran, cited in Nichols v. Chacon, at 1105.

The Nichols opinion also cited Brockway v. Shepherd, 942 F.Supp. 1012 (M.D.Pa. 1996), where that court held that the display of the extended middle finger in a show of disrespect was not an obscene gesture within the meaning of relevant Supreme Court opinions and does not amount to fighting words. Nichols at 1107. The Nichols opinion also cited Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997), in which a police officer observed a truck passenger to shout "fuck you" and extend his middle finger to protestors as the truck drove past. The police officer followed the vehicle and eventually arrested the truck passenger for disorderly conduct. After his acquittal for disorderly conduct, Sandul filed a Section 1983 action. The Sixth Circuit found that, under the circumstances, Sandul's actions were protected speech, because his acts were not likely to inflict injury or to incite an immediate breach of the peace. Sandul, at 1255.

Many parallels may be drawn from the Nichols case and the case at hand.  First of all, the plaintiff "flipped off" the defendant, an Arkansas State Trooper. Like the Plaintiff herein, Nichols was pulled over and given a citation for disorderly conduct pursuant to the Arkansas "fighting words" statute. However, unlike Plaintiff herein, Nichols was not verbally abused, arrested, searched, and confined in deplorable conditions. Even so, Trooper Chacon was sued pursuant to Section 1983 and asserted the qualified immunity defense. Nichols, like the Plaintiff herein, asserted that his conduct was protected First Amendment speech and that the arrest and citation where, therefore, illegal. In addressing the applicability of the qualified immunity defense, the district court identified two legal issues:

First, were the Plaintiff's constitutional rights violated when he was charged with disorderly conduct for having "flipped off" the Defendant, a state trooper? Second, at the time

this incident occurred, could the state trooper reasonably have believed Plaintiff's action constituted disorderly conduct under the applicable state criminal statute?  Id. at 1101.

The Nichols court addressed these issues in the context of competing summary judgment motions filed by both parties. These same issues are now before this Court.

Any question concerning the protected nature of Plaintiffs' conduct herein was answered by the court in Nichols as follows:

The Supreme Court has held *on numerous occasions* that the 'First Amendment protects a significant amount of verbal criticism and challenge directed at police officers'. Hill, 107 S.Ct. at 2509. It has said that '[t]he freedom of individuals verbally to oppose or challenge police without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state'."

Id. at 1104, quoting from Hill. (emphasis added)

As this Court is well aware, and as the Nichols court noted, the gesture at issue "has a commonly understood meaning and connotation" and is "as effective as spoken words" in getting the message across. Id. Thus, the Nichols court analyzed the gesture "just as if Nichols had spoken the words 'f[uc]k you'." Id. Public display of the "f word" cannot be made a criminal offense.  Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780 (1971).

The Nichols court discusses a *number* of cases from other jurisdictions fully supporting the conclusion that the display of one's middle finger is constitutionally protected speech. These cases included the following:

• The display of the extended middle finger in a show of disrespect is not an obscene gesture, does not amount to fighting words, and is protected by the First Amendment.  Brockway v. Sheppard, 942 F. Supp. 1012 (N.D. Penn. 1996)

• There is a First Amendment right to challenge the police even by crass and inarticulate verbal challenges. MacKinney v. Nielson, 69 F.3d 1002 (9th Cir. 1995)

• Leaning out the window of a passing vehicle and shouting "f ___ k you" and extending one's middle finger to a group of abortion protestors is protected free speech and could not constitute criminal conduct. Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997)

As briefly noted above, the arresting officer in Sandul made the same argument asserted by Defendants herein. That is, the witnessing of an expletive and hand gesture led to the arrest and charge of Sandal with disorderly conduct. The Sixth Circuit determined there was Section 1983 liability, because the arresting officer should have known he was violating Sandul's First Amendment rights. To the extent Defendants herein may seek to rely on the fact that the gestures were displayed to them in a public area, the Sixth Circuit rejected this contention in Sandul as follows:

> Sandul's words and actions do not rise to the level of fighting words. The actions were not likely to inflict injury or to incite an immediate breach of the peace. Sandul's vehicle was traveling at a high rate of speed on the opposite side of the street, a considerable distance away from protestors to whom the language was directly. Sandul was in a moving vehicle; the entire incident was over in a matter of seconds.

Id. at 1255. Under these facts the Sixth Circuit concluded that "it is inconceivable that Sandul's fleeting actions and words would provoke the type of lawless action eluded to in Chaplinsky." Id. See also State v. Rivenburgh, 933 S.W.2d 698 (Tex. App. - San Antonio, 1997) - motorist making "vulgar gesture" and mouthing obscenities in traffic did not "tend to incite an immediate breach of the peace at this time and place". Id. at 701.

There is additional authority for the proposition that display of the gesture to police officers is a "clearly established" right. See Cook v. Board of County Commissioners of the County of Wyandott, 966 F. Supp. 1049 (D. Kansas 1997), wherein the arresting officer had

witnessed Cook "flipping the bird" at him. In rejecting the defense of qualified immunity, the court held that it could not:

> ...infer that a reasonable police officer would necessarily believe that plaintiff was engaged in disorderly conduct or that - in light of clearly established law and the information known to Officer Drake - a reasonable officer would have had probable cause to arrest plaintiff and charge him with disorderly conduct in violation of Kansas law.

Id. at 1052. Further, in Hammond v. Adkisson, the conviction was improper where the trial judge failed to find that the words in question were used under such circumstances that they were likely to arouse the person to whom they were addressed to immediate and violent anger. 536 F.2d 237 (8th Cir. 1976). Hammond is important because Defendant Cross implies that the presence of young children somehow makes this arrest valid. In Hammond, the woman was on her porch while her 13 year old cousin was getting arrested and she said "You m. f. son-of-a-bitches think you all can come out and do anything that you want to do." Id. At that point, the officer told her that she was under arrest; Ms. Hammond replied, "You m. f. pigs is not gonna carry me anywhere," and she ran into her house. Id. Ms. Hammond was found not guilty after federal appeal, and her charges cited the old Arkansas Disorderly Conduct statute: Ark.Stat.Ann. s 41-1412.1 which prohibits: "use of any profane, violent, vulgar, abusive or insulting language . . . calculated to arouse to anger the person . . . addressed, or to cause a breach of the peace or an assault." And, finally, a student who called teacher a "bitch" which was heard by "many, if not all of her classmates," was adjudicated to be delinquent under a statute providing that any person who abuses or insults a public school teacher while that teacher is performing normal and regular or assigned school responsibilities is guilty of a misdemeanor, and student appealed. Shoemaker v. State, 343 Ark. 727, 38 S.W.3d 350 (2001). The Supreme Court of Arkansas overturned the conviction and held that the statute impinged on the First Amendment, as well as the due process clause of the Fourteenth Amendment. Id.

In the case at bar, there is no indication that the Plaintiff's behavior in saying to Defendant Cross, "Fuck you," was anything but protected speech. The fact that Plaintiff was in a car in a public place, yelling obscenities does not lend itself to probable cause.  This is because no one has asserted that anyone, neither Defendant Cross himself nor the alleged children in the back of the unknown woman's vehicle, were provoked to a violent and disorderly response by the Plaintiff's words. Nor has Defendant Cross offered evidence to anything which would support the conclusion that the Plaintiff's actions were motivated by an intent to cause a violent or disorderly response on the part of anyone. In fact, the deposition of Mr. Thurairajah makes it quite clear that the Plaintiff did not like the Defendant and wished to express this to him. <u>Plaintiff's Exhibit A</u>, pp.38-39, 42 ¶¶5-12.  Mr. Thurairajah, at that moment, wanted Defendant Cross to know in definite, unmistakable terms that he did not like him.  As in <u>Buffkins v. Omaha</u>, there is no evidence that the Plaintiff's speech was "an incitement to immediate lawless action," because his comment did not cause any sort of rabble.

Further, the citation of authority shows that Defendant Cross is not entitled to qualified immunity for his actions in arresting Mr. Thurairajah, because he did not have arguable probable cause to arrest him for any other offense. The applicable law to this case was certainly well-settled, to such an extent that reasonably well-trained police officer would have known his actions violated Plaintiff's First, Fourth, and Fourteenth Amendment rights.

This leads to the conclusion that Defendant Cross is ineligible to assert a qualified immunity defense.  This Court must, in addressing the qualified immunity defense, first determine whether the Plaintiffs' rights were "clearly established" at the time of the incident. The <u>Nichols</u> case is controlling and favors Mr. Thurairajah's claims that Defendant Cross violated his "clearly established" rights. In light of the <u>Nichols</u> case, and the plethora of cases discussed

hereinabove demonstrate, qualified immunity is simply not available to law enforcement officers who respond to the gesture in question by attempting to charge a citizen with disorderly conduct. Defendant Cross clearly initiated the stop in response to the protected speech. Plaintiff's rights in this regard were clearly established in June of 2015, when the stopped occurred, just as they were clearly established in Arizona and in Arkansas when Duran and Nichols were charged. Significantly, the arrests of Duran and Nichols predated the arrest of Plaintiffs herein.

In both Duran and Nichols the officers' conduct in responding to the gestures was found to have been objectively unreasonable. Plaintiffs submit that a highly trained, experienced trooper entrusted with enforcement of state laws should be held to the same standard as police officers in these cases. This standard precludes the qualified immunity defense as a matter of law. Therefore, for all of the reasons stated herein, Plaintiff requests that the Court deny Defendant's Motion for Summary Judgment.

## B. Defendant Cross Used Excessive Force in His Illegal Arrest of Plaintiff

Defendant Cross asserts that he did not use excessive force in his illegal arrest of Mr. Thurairajah, however, since the arrest was illegal, any force used against Mr. Thurairajah by Defendant Cross was unlawful.

Baldridge v. Cordes, 350 Ark. 114, 85 S.W.3d 511 (2002) (alleged unlawful arrest and search and seizure); Garner v. Limbocker, 28 Ark. App. 68, 770 S.W.2d 673 (1989) (use of excessive force by police officer). The Arkansas Civil Rights Act of 1993 provides individuals with the right to be free from discrimination based on race, religion, national origin, gender or disability. That protection applies in the areas of employment, public accommodations, property transactions, contractual transactions and the political process. Unlike the federal statute which is applicable to individuals acting under color of state law, this section applies to private

individuals. Another section of the statute parallels federal law; it provides for remedies against individuals acting under color of state law who deprive a person of the rights guaranteed by the Arkansas Constitution. See § 33:17. § 22:8.Liability under the federal Civil Rights Act, 1 Arkansas Law Of Damages § 22:8.

This case is on point with Copeland v. Locke, 613 F.3d 875, 880 (8th Cir. 2010). In Copeland, the defendant arrested Copeland for telling the police officer to move his "fucking car." Id. at 878. There, as in our case, the defendant unlawfully arrested Copeland for yelling something obscene in public. The Copland court held:

> That is, "[i]t is ... fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers,* 973 F.2d 1379, 1387 (8th Cir.1992); *see also City of Houston v. Hill,* 482 U.S. 451, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

Id. at 880.

Defendant Cross arrested Mr. Thurairajah for exercising his First Amendment right to freedom of speech. Mr. Thurairajah's arrest was an unlawful arrest performed by Defendant Cross in violation of Mr. Thurairajah's First Amendment Right.

The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir.2009) (quotation omitted). Whether an officer's use of force is "excessive" is a question of whether the force used was "objectively reasonable under the particular circumstances." *Id.* (quotation omitted). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct.

1865, 104 L.Ed.2d 443 (1989) (internal quotation omitted). Accordingly, the Court must "evaluate the totality of the circumstances, including the severity of the crime, the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee." Cook, 582 F.3d at 849.

The record, viewed in a light most favorable to Mr. Thurairajah, indicates that as Mr. Thurairajah exited his vehicle, Defendant Cross grabbed him by his arm and forcefully shoved him against Mr. Thurairajah's car, and slammed the cruiser doors on his legs leaving bruises on the Plaintiff's shins and wrists. Plaintiff's Exhibit A, p. 43 ¶¶19-20. He damaged caused not only physical injuries to Mr. Thurairajah (Id. at 89, 93 ¶¶17-20), but mental injury as well. Id. at 44; 93, ¶¶ 44 ¶21-24.

The Copeland case is similar. There, the plaintiff, just as Mr. Thurairajah, complained of more than just minimal physical injuries. Mr. Thurairajah also suffers from heightened anxiety and phobias as a result of this frightening and unlawful experience with Defendant Cross. The Copeland case reasoned in this similar scenario:

> While "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury," *id.* at 850 (quotation omitted), Steibel presented evidence of injuries which are, as a matter of law, more than *de minimis*. Notably, in *Wertish v. Krueger,* we found that "relatively minor scrapes and bruises" coupled with a "less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries" that did not support a finding of excessive force. 433 F.3d 1062, 1067 (8th Cir.2006); *see also Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990) (noting "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force"). Steibel alleges injuries which are more than simple cuts and bruises, however. Indeed, the record indicates that Steibel suffered more than mere pain, he suffered lacerations from the handcuffs. Additionally, Steibel alleged chronic injury to his knee as a result of the incident. Such injuries are not *de minimis* as a matter of law. Accordingly, Steibel has presented sufficient evidence to create a genuine issue of fact as to whether the force used to effectuate his unlawful arrest was excessive.

Id. at 882.

Just as Defendant Cross contends, defendant's in the Copeland case asserted that any injuries to the plaintiff were the result of pre-existing medical conditions and not the result of the officer's use of force. The Court addressed that point, stating, "As we noted in *Cavataio,* when an officer exerts objectively reasonable force which results in the aggravation of a pre-existing injury unknown to the officer, such an injury is not sufficient to indicate excessive force." Id., citing Cavataio, 570 F.3d at 1020. The Copeland held that ultimately the evidence was unclear as to whether the injuries sustained by the plaintiff were the result of the pre-existing conditions or not, instead leaving this question for the jury. Id.

Most recently, the United States Supreme Court has held that pretrial detainees must show only that the force purposely or knowingly used against him was objectively unreasonable in order to demonstrate that it was excessive in violation of the Fourteenth Amendment's Due Process Clause. Kingsley v. Hendrickson, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). As a result, this Court must consider Kingsley and Copeland controlling, and therefore leave the question of excessive force to the finder of fact. Mr. Thurairajah must prevail against summary judgment on this point.

### C. Plaintiff's Due Process Claims Are Valid

Defendant Cross's arguments regarding due process are based on the incorrect assumption that his arrest was lawful. However, Defendant Cross did not have probable cause to arrest Mr. Thurairajah, and therefore his arrest was illegal and violated Mr. Thurairajah's rights under the United States and Arkansas Constitution.

As mentioned above, the United States Supreme Court has held that pretrial detainees have Fourteenth Amendment's Due Process Clause protections. Kingsley v. Hendrickson, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015). The Eighth Circuit has also held that pretrial detainees have

constitutional rights under the Due Process Clause of the Fourteenth Amendment, to be treated the same as if the pretrial detainee were subject to Eighth Amendment claims. Edwards v. Byrd, 750 F.3d 728, 732 (8th Cir. 2014) (Citing Putman v. Gerloff, 639 F.2d 415, 419 (8th Cir.1981). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); see also Andrews v. Neer, 253 F.3d 1052, 1060–61 (8th Cir.2001). Thus, our due-process excessive-force analysis focuses on whether a defendant's "purpose in [using force against a pretrial detainee] ... was to injure, punish or discipline" the detainee. Putman, 639 F.2d at 421; see also Bell v. Wolfish, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, the Due Process Clause affords pretrial detainees at least as much protection as the Eighth Amendment provides to convicted prisoners. Owens v. Scott Cnty. Jail, 328 F.3d 1026, 1027 (8th Cir.2003). Therefore, if the use of force in this case would have violated the Eighth Amendment had the plaintiffs been prisoners, that conduct necessarily violated the plaintiffs' rights under the Fourteenth Amendment.")

Finally, the jury determines proximate cause, and the Plaintiff has demonstrated a factual basis that Defendant Cross is the proximate cause for his treatment at the Sebastian County Jail.

Defendant Cross is mistaken that Mr. Thurairajah has no Due Process protection. For the reasons set forth above, Defendant Cross's due process violations directly affect the issue of his entitlement to qualified immunity. Mr. Thurairajah must therefore prevail, and Defendant' Cross's Motion for Summary Judgment must be dismissed on this ground.

> **II.    Defendant Cross is Not Entitled to Summary Judgment Regarding the State Law, Constitutional, and Arkansas Civil Rights Claims Because He Is Not Entitled to Qualified Immunity**

Mr. Thurairajah agrees with Defendant Cross's analysis that to overcome statutory immunity, a plaintiff must provide factual support showing malice but asserts that Defendant Cross fundamentally misunderstands the meaning of "malice." Malice is defined as:

> **malice** *n.* (14c) **1.** The intent, without justification or excuse, to commit a wrongful act. **2.** Reckless disregard of the law or of a person's legal rights….

MALICE, Black's Law Dictionary (10th ed. 2014).

As repeatedly asserted throughout this brief, Defendant Cross intended to arrest Mr. Thurairajah, he did so without justification or excuse and committed the wrongful act of unlawful arrest. He did this in reckless disregard of the law or Mr. Thurairajah's legal rights. The Arkansas Supreme Court has held that a state employee who acts with malice, outside of the scope of their official duties, circumvents their claim to qualified immunity. See Newton v. Etoch, 332 Ark. 325, 339, 965 S.W.2d 96, 103 (1998) (Where the Arkansas Supreme Court concluded that a prosecutor did not not have absolute immunity for the conduct alleged in the plaintiff's complaint.) Because of Defendant Cross's illegal and malicious acts as alleged by Mr. Thurairajah, Defendant Cross must not prevail in his Motion for Summary Judgment. Mr. Thurairajah asserts that if the state claims are to be interpreted the same as the constitutional claims, Defendant Cross is doubly unentitled to summary judgment. These are disputed issues of material fact that must be presented to the jury. Questions of recklessness and punitive damages are a question for the jury. Defendant's Motion for Summary Judgment must be dismissed.

### III.　　Defendant Cross Is Liable for the Tort claims Because Defendant Cross Is Not Entitled to Qualified Immunity

Defendant Cross denies liability for assault and battery, false arrest, false imprisonment, trespass, outrage, and invasion of privacy. Defendant Cross urges the court to preclude Mr. Thurairajah from prevailing on these claims because Defendant Cross's incorrect assertion that

his arrest of Mr. Thurairajah was lawful. It was not. Counsel for Plaintiff will not belabor this point for each and every named tort because this issue has been thoroughly analyzed above. Once again, the lawfulness of Defendant Cross's actions are contentiously disputed. Because these tort claims are dependent upon a finding that Defendant Cross did not have probable cause, and is precluded from qualified immunity as a matter of law, Defendant Cross must not prevail in his Motion for Summary Judgment. Mr. Thurairajah should not be denied a jury hearing these claims and Defendant's Motion should be dismissed.

### IV.    Plaintiff Need Not Prove Monetary Damages to Support a Finding of Liability, The Jury May Award Punitive Damages

Defendant is not entitled to summary judgment regarding actual injury or the monetary expenses paid for by Mr. Thurairajah's family. Damages which may be recovered in a § 1983 action consist of three types: actual or compensatory, nominal, and punitive. <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299 (1986). Actual damages include compensation for out-of-pocket loss, other monetary losses, and impairment of reputation, personal humiliation, mental anguish, and suffering. <u>Id.</u>, from <u>Committee Comments to Eighth Circuit Model Jury Instructions</u> - Civil, 4.51. Furthermore, if a jury finds that a plaintiff's damages have no monetary value, it may award nominal damages. <u>Cowans v. Wyrick</u>, 862 F.2d 697 (8th Cir. 1988) and <u>Committee Comments to Eighth Circuit Model Jury Instructions</u> - Civil, 4.52.

### V.    Plaintiff had Actual Damages

Plaintiff testified at his deposition that he was made to be very anxious, that this could affect his whole life, when Defendant Cross illegally arrested him. <u>Plaintiff's Exhibit A</u>, p. 44. Plaintiff has medical records where he complained of this arrest as being the basis for mental illness and a record of money exchanged for prescription medication as a result. <u>Defendant's</u>

Exhibit C, p. 3 and Defendant's Exhibit F, p. 12. Plaintiff has, therefore, made a legally sufficient showing of damages regardless of whether or not he actually had any out-of-pocket expenses, including but not limited to: towing fees, transportation costs to and from court, attorney fees, prescriptions, and doctor bills. It is irrelevant who paid for the Plaintiff's bills that were accumulated in Plaintiff's name, as those third-parties do not have standing to sue Defendant Cross. Finally, the Plaintiff was intermittently employed and did have to pay for some of those costs himself and much of the rest of the money came from his allowance. Plaintiff's Exhibit A, at 30, ¶¶12-21.

A plaintiff may claim damages for the loss of time, inconvenience, physical discomfort, and any resulting injury to his physical or mental health. Missouri Pac. R. Co. v. Yancey, 178 Ark. 147, 10 S.W.2d 22 (1928). The injured party may also recover for the mental anguish, embarrassment, and sense of shame and disgrace caused by the false imprisonment. Id. For example, a storeowner apprehended an apparent burglar, detained him for ninety minutes before calling the police, handcuffed him to a pole, and forcibly assaulted him. Id. The burglar was awarded both compensatory damages and punitive damages. Id. Although the plaintiff was a convicted felon, he could still recover damages for his humiliation arising out of the false imprisonment. Id. Because of this, the Plaintiff does not believe the Defendant will be able to introduce evidence of prior unrelated convictions at trial due to relevance.

## CONCLUSION

Defendant Cross's defense of qualified privilege is not viable because his actions were malicious and beyond the scope of his duties. The facts and context in which Defendant Cross acted creates an issue of material fact that the Defendant acted maliciously and in bad-faith for the purpose punishing Mr. Thurairajah for exercising his First Amendment freedom of speech.

Defendant Cross's Motion for Summary Judgment should not be granted because there exist genuine issues of material fact for the jury.  The Plaintiff contends that he did not see any children present. As a result of Defendant's unlawful and malicious actions against him, Plaintiff has experienced damages and Defendant is the proximate cause of these damages.  For the above reasons the Defendant's Motion for Summary Judgment should be denied.

WHEREFORE, the Plaintiff prays that this Court deny Defendant's Motion for Summary Judgment in its entirety, and for costs and expenses incurred herein, including reasonable attorney's fees, and all further relief to which the Court may deem Plaintiff is entitled.

Respectfully submitted,

Eric Thurairajah, Plaintiff

By: /s/ W. Whitfield Hyman
W. Whitfield Hyman
Attorney for Eric Thurairajah
King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125
479-785-1567 Fax
ABA# 2013-237
hyman@arkansaslawking.com

## CERTIFICATE OF SERVICE

I, W. Whitfield Hyman, hereby certify that on this 29th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification to any participants.

/s/ W. Whitfield Hyman
W. Whitfield Hyman