**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

**ERIC ROSHAUN THURAIRAJAH** **PLAINTIFF**

**vs.** **No. 16-2123**

**THE CITY OF FORT SMITH, ARKANSAS, et al.** **DEFENDANT**

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Standard of Review**

Rule 50 of the Federal Rules of Civil Procedure (hereinafter designated as "F.R.C.P.") governs motions for judgment as a matter of law. On appeal, the appellate court reviews the granting of judgment as a matter of law as it does summary judgment - that is, *de novo*, applying the same standard as the district court. *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir. 1996). Judgment as a matter of law is appropriate only when the nonmoving party fails to present enough evidence to permit a reasonable jury to decide in his favor. [The appellate court does] not judge witnesses' credibility, [it gives the nonmoving party the benefit of all reasonable inferences, and [it looks] at the evidence in the light most favorable to [the nonmoving party]. *Ibid*.

When entertaining a motion for judgment as a matter of law, the court should review all evidence in the record. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000). If a court analyzes such a motion after trial, the court must assume that the jury resolved all conflicts of evidence in favor of the nonmoving party, assume as true all facts which the prevailing party's evidence tended to prove, and deny the motion, if in light of the foregoing, reasonable jurors

could differ as to the conclusion that could be drawn from the evidence. *Walsh v. National Computer Systems, Inc*., 332 F.3d 1150 (8th Cir. 2003).

**Summary of Facts**

In this case exists many issues of material fact that are not in dispute. Many of the facts that are in dispute do not effect liability, but may influence a jury as to the amount of damages that should be awarded. The occurrence in question took place in Sebastian County, Arkansas, on the afternoon of June 2, 2015. Plaintiff, (hereinafter referred to as Mr. Thurairajah), a young man of east-Indian decent (Plaintiff's Ex. A, Depo of Plaintiff, p. 11 ¶ 19), drove past Separate Defendant Trooper Lagarian Cross (hereinafter, Defendant Cross, or simply, the Defendant), a police officer, while Defendant Cross was standing outside talking to a young woman. Id. at 37, ¶¶13-20. As Mr. Thurairajah drove past the Defendant, Mr. Thurairajah yelled, "Fuck you," (Id. at pp. 38 ¶19- 39 ¶10) from his car as he continued to drive away at 35 miles per hour, in the direction of a nearby gas station. Id. at 41, ¶9-14 Mr. Thurairajah was driving a 2008 Chevrolet Cobalt automobile. Defendant Cross's Exhibit E, Police Report. He was alone and had no passengers. Plaintiff's Exhibit A, at p. 58 ¶10-11. Plaintiff estimates that, across five lanes of traffic and an entire front yard, he was approximately fifty (50) yards away from Defendant when yelling out to him. Plaintiff's Exhibit A, at 40, ¶2-14.

It was approximately 7:13pm, just thirteen (13) minutes after Defendant Cross's radio transmission that he was starting his shift. Plaintiff's Exhibit C, Radio Transmission Log. Defendant Cross says he pulled over a minivan in what he claims was a "routine traffic stop." Defendant's Exhibit D at ¶ 2, Plaintiff's Exhibit C. Defendant Cross states that he had stopped a "younger adult female who had young children with her." Defendant's Exhibit D at ¶ 3. According to Defendant Cross, as he approached the minivan, but before he could obtain any

information from the driver, Defendant Cross states that he “heard an individual yell ‘Fuck You’ extremely loud [sic] as the individual drove passed [sic].” Id. at ¶ 4. The Defendant claims that upon seeing the alleged reaction of the minivan’s driver and passengers – he did not have personal knowledge of their actual state of mind and did not ask them – he simply assumed that the audience was “alarmed,”—and Defendant believed that Mr. Thurairajah had committed a crime and must be arrested. Id. at ¶ 5-7. The Plaintiff asserts that the Defendant will not be able to introduce evidence as to witness’s states of mind at trial, only the Defendant’s interpretation of those reactions. The Defendant admits that he immediately decided to leave the alleged traffic stop with the minivan to stop Mr. Thurairajah. Id. at ¶ 7. Mr. Thurairajah had not committed any crime, and was not suspected of having committed any other crimes. Plaintiff’s Statement of Undisputed Material Facts, at ¶XX. At the scene of the arrest, Defendant Cross handcuffed Mr. Thurairajah and placed him into the back of the police car. Plaintiff’s Exhibit A at 47, ¶ 1-25. Defendant Cross then had Mr. Thurairajah’s vehicle towed, which Defendant’s parents had to pay for as a result. Id. at 49, ¶21; 50, ¶6-8.

After illegally arresting Mr. Thurairajah, Defendant Cross admits he took Mr. Thurairajah to the Sebastian County Jail. Defendant’s Statement of Undisputed Material Facts, p. 5 ¶¶40-42. Defendant Cross was at the jail long enough to finish up his paperwork which was the basis for the Defendant’s Disorderly Conduct charge. Plaintiff’s Exhibit A, pp. 51-56, notably pp. 54 ¶18 – 55 ¶10. Defendant Cross has “no reason” to deny that Mr. Thurairajah was held without protection the protection of socks and shoes while in a cell that was in putrid condition. Defendant’s Statement of Undisputed Material Facts, p. 5, ¶¶40-42; Plaintiff’s Exhibit D, Plaintiff’s Response to First Set of Interrogatories, Nos. 2, 4, 6, 7, 9, 10, 14; Plaintiff’s Exhibit A, at pp. 56, ¶20 – 57, ¶12. Finally, Mr. Thurairajah spent about 8 hours in jail, hired a lawyer, and

was found not guilty of the Disorderly Conduct charges. Plaintiff's Exhibit A, at pp. 30, ¶4-6, pp. 55 ¶12-14. Pp. 69-70 ¶24-1. In April 2016, the Plaintiff was prescribed medication and diagnosed with mental conditions that he had not suffered from previously that he claims was a result of this illegal arrest. Defendant's Exhibit C, Plaintiff's Medical Records, pp 12, and Defendant's Exhibit F, Plaintiff's Pharmacy Records pp. 3.

**Argument**

The crux of Mr. Thurairajah's case – whether or not Defendant Cross is entitled to qualified immunity - rests upon legal issues that are in dispute. The first dispute between Plaintiff and Defendant Cross is that Defendant Cross had probable cause to arrest Mr. Thurairajah. The second disputed fact is that Defendant Cross violated Mr. Thurairajah's clearly defined rights under the First, Fourth, Fifth, and Fourteenth Amendments. These two disputed issues should be decided in favor of the plaintiff by the Court as a matter of law. Once the Plaintiff prevails on these issues, only the issue of damages should be left to the jury for the causes of action listed in this motion and brief in support, therefore Mr. Thurairajah must be given partial summary judgment. Defendant Cross's inhumane and punitive treatment of Mr. Thurairajah as a pretrial detainee, and resulting punitive damages, are questions for the jury.

Defendant Cross is not entitled to qualified immunity, and all of the material facts needed for recovery on the Civil Rights Violations, False Arrest, False Imprisonment, Assault, Battery, and Malicious Prosecution are present, the only question is to the extent of damages that should be awarded to the Plaintiff. Because a finding of qualified immunity must be made after an analysis of the above-stated issues that are issues of law only being disputed by the Defendant without the backing of the Supreme Court or any Circuit Court of Appeals, the Plaintiff must win

on the issue of qualified immunity as a matter of law, and Mr. Thurairajah should be granted his trial on damages.

## I. Defendant Cross is Not Entitled to Qualified Immunity as to Plaintiff's Federal Claims or Arkansas Civil Rights Act Claims

### A. Defendant Cross's Arrest-Related Constitutional Violations Are Valid Because Defendant Cross Had No Probable Cause to Stop and Arrest Plaintiff Because Plaintiff's First Amendment Claim Is Clearly Established

The most disputed issue of law in this case is whether or not the Defendant illegally arrested Mr. Thurairajah. Contrary to the Defendant's opinion, Mr. Thurairajah argues that the arrest was indeed illegal because Defendant Cross apprehended Mr. Thurairajah with no justifiable probable cause. As a result, the detention, arrest, and subsequent search forced upon Mr. Thurairajah were in violation of Mr. Thurairajah's rights under the First, Fourth and Fourteenth Amendments of the United States Constitution, and parallel state law claims.

It is well-settled that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. Houston v. Hill, 482 U.S. 451 (1987). The United States Supreme Court, in Houston v. Hill, struck down a city ordinance which permitted police officers to arrest an individual for "wilfully or intentionally interrupt[ing] a city policeman . . . by verbal challenge during an investigation." Id. at 454. The Court in its opinion made a detailed examination of protected speech under the First Amendment, in the context of arrests by law enforcement officers. In Terminiello v. Chicago, 337 U.S. 1 (1949), for example, the Supreme Court had stated that:

> Speech is often provocative and challenging . . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises for above public inconvenience, annoyance, or unrest.

Cited in Houston v. Hill, at 461.

In Lewis v. City of New Orleans, 415 U.S. 130 (1974), the Supreme Court again vacated a conviction and invalidated a city ordinance, under which that defendant had been convicted for yelling obscenities at a police officer who had asked the defendant's husband for his driver's license. Houston v. Hill, cited supra. In Houston v. Hill, the Supreme Court concluded that:

> Today's decision reflects the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint . . . . [t]he First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive.

Id. at 471.

In Buffkins v. Omaha, 922 F.2d 456 (1991), the Eighth Circuit Court of Appeals held that the District Court should have found, as a matter of law, that officers did not have probable cause to arrest Buffkins for calling a police officer an "asshole." Id. at 472. Referring to Houston v. Hill, the Eighth Circuit stated that:

> [T]he "fighting words" doctrine may be limited in the case of communication addressed to properly trained police officers because police officers are expected to exercise greater restraint in their response than the average citizen.

Buffkins, cited supra.

In the Western District of Arkansas, the Honorable H. Franklin Waters held, in Nichols v. Chacon, 110 F.Supp.2d 1099 (2000), that an arrestee's display of his middle finger in an upward gesture at a police officer did not constitute fighting words and did not create probable cause for the police officer to arrest or cite the arrestee for disorderly conduct, as defined by the Arkansas statute. Id. at 1110. In his opinion, Judge Waters cited Chaplinsky, Lewis v City of New Orleans, Terminiello, Buffkins, and Houston v. Hill, all cases relevant to Mr. Thurairajah's argument. He further cited Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990), in which an arrest was found to be without probable cause where an arrestee had directed "a series of expletives and an 'obscene' hand gesture at a police officer, Gilbert Aguiler." Duran, cited in Nichols v. Chacon, at 1105.

The Nichols opinion also cited Brockway v. Shepherd, 942 F.Supp. 1012 (M.D.Pa. 1996), where that court held that the display of the extended middle finger in a show of disrespect was not an obscene gesture within the meaning of relevant Supreme Court opinions and does not amount to fighting words. Nichols at 1107. The Nichols opinion also cited Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997), in which a police officer observed a truck passenger to shout "fuck you" and extend his middle finger to protestors as the truck drove past. The police officer followed the vehicle and eventually arrested the truck passenger for disorderly conduct. After his acquittal for disorderly conduct, Sandul filed a Section 1983 action. The Sixth Circuit found that, under the circumstances, Sandul's actions were protected speech, because his acts were not likely to inflict injury or to incite an immediate breach of the peace. Sandul, at 1255.

Many parallels may be drawn from the Nichols case and the case at hand. First of all, the plaintiff "flipped off" the defendant, an Arkansas State Trooper. Like the Plaintiff herein, Nichols was pulled over and given a citation for disorderly conduct pursuant to the Arkansas "fighting words" statute. However, unlike Plaintiff herein, Nichols was not verbally abused, arrested, searched, and confined in deplorable conditions. Even so, Trooper Chacon was sued pursuant to Section 1983 and asserted the qualified immunity defense. Nichols, like the Plaintiff herein, asserted that his conduct was protected First Amendment speech and that the arrest and citation where, therefore, illegal. In addressing the applicability of the qualified immunity defense, the district court identified two legal issues:

First, were the Plaintiff's constitutional rights violated when he was charged with disorderly conduct for having "flipped off" the Defendant, a state trooper? Second, at the time this incident occurred, could the state trooper reasonably have believed Plaintiff's action constituted disorderly conduct under the applicable state criminal statute? Id. at 1101.

The Nichols court addressed these issues in the context of competing summary judgment motions filed by both parties. These same issues are now before this Court.

Any question concerning the protected nature of Plaintiffs' conduct herein was answered by the court in Nichols as follows:

The Supreme Court has held *on numerous occasions* that the 'First Amendment protects a significant amount of verbal criticism and challenge directed at police officers'. Hill, 107 S.Ct. at 2509. It has said that '[t]he freedom of individuals verbally to oppose or challenge police without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state'."

Id. at 1104, quoting from Hill. (emphasis added)

As this Court is well aware, and as the Nichols court noted, the gesture at issue "has a commonly understood meaning and connotation" and is "as effective as spoken words" in getting the message across. Id. Thus, the Nichols court analyzed the gesture "just as if Nichols had spoken the words 'f[uc]k you'." Id. Public display of the "f word" cannot be made a criminal offense. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780 (1971).

The Nichols court discusses a *number* of cases from other jurisdictions fully supporting the conclusion that the display of one's middle finger is constitutionally protected speech. These cases included the following:

• The display of the extended middle finger in a show of disrespect is not an obscene gesture, does not amount to fighting words, and is protected by the First Amendment. Brockway v. Sheppard, 942 F. Supp. 1012 (N.D. Penn. 1996)

• There is a First Amendment right to challenge the police even by crass and inarticulate verbal challenges. MacKinney v. Nielson, 69 F.3d 1002 (9th Cir. 1995)

• Leaning out the window of a passing vehicle and shouting "f ___ k you" and extending one's middle finger to a group of abortion protestors is protected free speech and could not constitute criminal conduct. Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997)

As briefly noted above, the arresting officer in Sandul made the same argument asserted by Defendants herein. That is, the witnessing of an expletive and hand gesture led to the arrest and charge of Sandal with disorderly conduct. The Sixth Circuit determined there was Section 1983 liability, because the arresting officer should have known he was violating Sandul's First Amendment rights. To the extent Defendants herein may seek to rely on the fact that the gestures were displayed to them in a public area, the Sixth Circuit rejected this contention in Sandul as follows:

> Sandul's words and actions do not rise to the level of fighting words. The actions were not likely to inflict injury or to incite an immediate breach of the peace. Sandul's vehicle was traveling at a high rate of speed on the opposite side of the street, a considerable distance away from protestors to whom the language was directly. Sandul was in a moving vehicle; the entire incident was over in a matter of seconds.

Id. at 1255. Under these facts the Sixth Circuit concluded that "it is inconceivable that Sandul's fleeting actions and words would provoke the type of lawless action eluded to in Chaplinsky." Id. See also State v. Rivenburgh, 933 S.W.2d 698 (Tex. App. - San Antonio, 1997) - motorist making "vulgar gesture" and mouthing obscenities in traffic did not "tend to incite an immediate breach of the peace at this time and place". Id. at 701.

There is additional authority for the proposition that display of the gesture to police officers is a "clearly established" right. See Cook v. Board of County Commissioners of the County of Wyandott, 966 F. Supp. 1049 (D. Kansas 1997), wherein the arresting officer had witnessed Cook "flipping the bird" at him. In rejecting the defense of qualified immunity, the court held that it could not:

> ...infer that a reasonable police officer would necessarily believe that plaintiff was engaged in disorderly conduct or that - in light of clearly established law and the information known to Officer Drake - a reasonable officer would have had probable cause to arrest plaintiff and charge him with disorderly conduct in violation of Kansas law.

Id. at 1052. Further, in Hammond v. Adkisson, the conviction was improper where the trial judge failed to find that the words in question were used under such circumstances that they were likely to arouse the person to whom they were addressed to immediate and violent anger. 536 F.2d 237 (8th Cir. 1976). Hammond is important because Defendant Cross implies that the presence of young children somehow makes this arrest valid. In Hammond, the woman was on her porch while her 13 year old cousin was getting arrested and she said "You m. f. son-of-a-bitches think you all can come out and do anything that you want to do." Id. At that point, the officer told her that she was under arrest; Ms. Hammond replied, "You m. f. pigs is not gonna carry me anywhere," and she ran into her house. Id. Ms. Hammond was found not guilty after federal appeal, and her charges cited the old Arkansas Disorderly Conduct statute: Ark.Stat.Ann. s 41-1412.1 which prohibits: "use of any profane, violent, vulgar, abusive or insulting language . . . calculated to arouse to anger the person . . . addressed, or to cause a breach of the peace or an assault." And, finally, a student who called teacher a "bitch" which was heard by "many, if not all of her classmates," was adjudicated to be delinquent under a statute providing that any person who abuses or insults a public school teacher while that teacher is performing normal and regular or assigned school responsibilities is guilty of a misdemeanor, and student appealed. Shoemaker v. State, 343 Ark. 727, 38 S.W.3d 350 (2001). The Supreme Court of Arkansas overturned the conviction and held that the statute impinged on the First Amendment, as well as the due process clause of the Fourteenth Amendment. Id.

In the case at bar, there is no indication that the Plaintiff's behavior in saying to Defendant Cross, "Fuck you," was anything but protected speech. The fact that Plaintiff was in a

car in a public place, yelling an obscenity does not lend itself to probable cause. This is because no one has asserted that anyone, neither Defendant Cross himself nor the alleged children in the back of the unknown woman's vehicle, were provoked to a violent and disorderly response by the Plaintiff's words nor has it been asserted that the actions of the Plaintiff would stir a reasonable person to violence or a disorderly response. Nor has Defendant Cross offered evidence to anything which would support the conclusion that the Plaintiff's actions were motivated by an intent to cause a violent or disorderly response on the part of anyone. In fact, the deposition of Mr. Thurairajah makes it quite clear that the Plaintiff did not like the Defendant and wished to express this to him. Plaintiff's Exhibit A, pp.38-39, 42 ¶¶5-12. Mr. Thurairajah, at that moment, wanted Defendant Cross to know in definite, unmistakable terms that he did not like him. As in Buffkins v. Omaha, there is no evidence that the Plaintiff's speech was "an incitement to immediate lawless action," because his comment did not cause any sort of rabble.

Further, the citation of authority shows that Defendant Cross is not entitled to qualified immunity for his actions in arresting Mr. Thurairajah, because he did not have arguable probable cause to arrest him for any other offense. The applicable law to this case was certainly well-settled, to such an extent that reasonably well-trained police officer would have known his actions violated Plaintiff's First, Fourth, and Fourteenth Amendment rights.

This leads to the conclusion that Defendant Cross is ineligible to assert a qualified immunity defense. This Court must, in addressing the qualified immunity defense, first determine whether the Plaintiffs' rights were "clearly established" at the time of the incident. The Nichols case is controlling and favors Mr. Thurairajah's claims that Defendant Cross violated his "clearly established" rights. In light of the Nichols case, and the plethora of cases discussed hereinabove demonstrate, qualified immunity is simply not available to law enforcement officers

who respond to the gesture in question by attempting to charge a citizen with disorderly conduct. Defendant Cross clearly initiated the stop in response to the protected speech. Plaintiff's rights in this regard were clearly established in June of 2015, when the stopped occurred, just as they were clearly established in Arizona and in Arkansas when Duran and Nichols were charged. Significantly, the arrests of Duran and Nichols predated the arrest of Plaintiffs herein.

In both Duran and Nichols the officers' conduct in responding to the gestures was found to have been objectively unreasonable. Plaintiffs submit that a highly trained, experienced trooper entrusted with enforcement of state laws should be held to the same standard as police officers in these cases. This standard precludes the qualified immunity defense as a matter of law

Baldridge v. Cordes, 350 Ark. 114, 85 S.W.3d 511 (2002) (alleged unlawful arrest and search and seizure); Garner v. Limbocker, 28 Ark. App. 68, 770 S.W.2d 673 (1989) (use of excessive force by police officer). The Arkansas Civil Rights Act of 1993 provides individuals with the right to be free from discrimination based on race, religion, national origin, gender or disability. That protection applies in the areas of employment, public accommodations, property transactions, contractual transactions and the political process. Unlike the federal statute which is applicable to individuals acting under color of state law, this section applies to private individuals. Another section of the statute parallels federal law; it provides for remedies against individuals acting under color of state law who deprive a person of the rights guaranteed by the Arkansas Constitution. See § 33:17. § 22:8.Liability under the federal Civil Rights Act, 1 Arkansas Law Of Damages § 22:8.

This case is on point with Copeland v. Locke, 613 F.3d 875, 880 (8th Cir. 2010). In Copeland, the defendant arrested Copeland for telling the police officer to move his "fucking

car." Id. at 878. There, as in our case, the defendant unlawfully arrested Copeland for yelling something obscene in public. The Copland court held:

> That is, "[i]t is ... fundamental that a lawful arrest may not ensue where the arrestee is merely exercising his First Amendment rights." *Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir.1992); *see also City of Houston v. Hill*, 482 U.S. 451, 462–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

Id. at 880.

Defendant Cross arrested Mr. Thurairajah for exercising his First Amendment right to freedom of speech. Mr. Thurairajah's arrest was an unlawful arrest performed by Defendant Cross in violation of Mr. Thurairajah's First, 4th, and 14th Amendment Rights.

The record, viewed in a light most favorable to Defendant Cross, indicates that the Defendant ordered Mr. Thurairajah to pull over and exit his vehicle by pursuing the Plaintiff with blue lights activated, then Defendant Cross searched the Plaintiff against his will, applied handcuffs to the Plaintiff, forced the Plaintiff into the back of his patrol car, and searched Plaintiff's vehicle, all due to Mr. Thurairajah yelling "Fuck you" in the presence of an allegedly alarmed woman and two children. Plaintiff's Exhibit A, p. 43 ¶¶19-20.

## II. As a Matter of Law, Defendant Trooper Cross Acted Intentionally, Recklessly and With Malice, and Therefore Does Not Have Qualified Immunity to the State Law Torts.

Malice is defined as:

> **malice** *n.* (14c) **1.** The intent, without justification or excuse, to commit a wrongful act. **2.** Reckless disregard of the law or of a person's legal rights….

MALICE, Black's Law Dictionary (10th ed. 2014).

As repeatedly asserted throughout this brief and Defendant's Affidavit, Defendant Cross intended to arrest Mr. Thurairajah, he did so without justification or excuse and committed the

wrongful act of unlawful arrest. He did this in reckless disregard of the law or Mr. Thurairajah's legal rights. The Arkansas Supreme Court has held that a state employee who acts with malice, outside of the scope of their official duties, circumvents their claim to qualified immunity. See Newton v. Etoch, 332 Ark. 325, 339, 965 S.W.2d 96, 103 (1998) (Where the Arkansas Supreme Court concluded that a prosecutor did not not have absolute immunity for the conduct alleged in the plaintiff's complaint.) Because of Defendant Cross's illegal and malicious acts as alleged by Mr. Thurairajah and confirmed by Defendant Cross, Plaintiff must prevail in his Motion for Summary Judgment on the Issue of Qualified Immunity.

## III. Defendant Cross Is Liable as a Matter of Law for the State Tort Claims of False Imprisonment and False Arrest.

The act of a law enforcement officer in detaining without legal authority establishes liability for false imprisonment, regardless of whether the officer was acting under direction of a superior and regardless of the defendant's good intention. The burden is on the defendant to show the detention was legally justified. Limited Stores, Inc. v. Wilson-Robinson, 317 Ark. 80, 876 S.W.2d 248 (1994); Grandjean v. Grandjean, 315 Ark. 620, 869 S.W.2d 709 (1994). The criminal statutes define false imprisonment as the act by which "without consent and without lawful authority, the person knowingly restrains another person so as to interfere substantially with the other person's liberty." Ark. Code Ann. §§ 5-11-103, 5-11-104.

The elements of a False Arrest claim are: (1) the defendant intentionally and unlawfully exercised force, or the threat of force, to restrain or confine the plaintiff; (2) the confinement compelled the plaintiff to stay or to go somewhere for an appreciable time; (3) the plaintiff did not consent to the confinement; and (4) the plaintiff suffered injury, damage or harm as a result of the confinement. Pettijohn v. Smith, 255 Ark. 780, 502 S.W.2d 618 (1973). Miller v. Kroger

Co., 82 Ark. App. 281, 289, 105 S.W.3d 789 (2003; Limited Stores, Inc. v. Wilson-Robinson, 317 Ark. 80, 84, 876 S.W.2d 248, 251 (1994).

A plaintiff may claim damages for the loss of time, inconvenience, physical discomfort, and any resulting injury to his physical or mental health. Missouri Pac. R. Co. v. Yancey, 178 Ark. 147, 10 S.W.2d 22 (1928). The injured party may also recover for the mental anguish, embarrassment, and sense of shame and disgrace caused by the false imprisonment. Id. For example, a storeowner apprehended an apparent burglar, detained him for ninety minutes before calling the police, handcuffed him to a pole, and forcibly assaulted him. Id. The burglar was awarded both compensatory damages and punitive damages. Id. Although the plaintiff was a convicted felon, he could still recover damages for his humiliation arising out of the false imprisonment. Id. Because of this, the Plaintiff does not believe the Defendant will be able to introduce evidence of prior unrelated convictions at trial due to relevance.

By Defendant Cross' own admission, he restrained the Plaintiff to a confined area for a period of time against his will. The only issue left to explore is the extent of damages.

IV. **Defendant Cross Is Liable as a Matter of Law for the State Tort claims of Assault and Battery.**

An assault is an intentional attempt by a person to do injury to another by force or violence. Costner v. Adams, 82 Ark. App. 148, 121 S.W.3d 164 (2003) (preparing to hit plaintiff with piece of wood); Swindle v. Thornton, 229 Ark. 437, 316 S.W.2d 202 (1958) (beating with rock and cutting with pocketknife). An assault is also committed by threatening gestures or words that demonstrate an immediate intention to commit a battery, when combined with the present ability to commit a battery. Costner v. Adams, 82 Ark. App. 148, 121 S.W.3d 164 (2003). However, no actual physical contact is necessary to constitute an assault. Restatement Second, Torts § 21. Specifically, the

plaintiff must prove that 1) the defendant created a reasonable apprehension of immediate harmful or offensive contact upon the plaintiff, 2) the defendant intended to cause that apprehension, and 3) the plaintiff was actually placed in that apprehension. Arkansas Model Jury Instructions–Civil, AMI 417 (2014 ed.). An attempt to commit a battery is only an assault if the other person is placed in imminent apprehension of the harmful or offensive contact. Restatement Second, Torts § 21.

Battery, also intentional in nature, is unconsented, wrongful, and offensive physical contact with another person that results in the unpermitted application of trauma to that person. Costner v. Adams, 82 Ark. App. 148, 121 S.W.3d 164 (2003). In particular, the plaintiff must prove that 1) the defendant intended to cause harmful or offensive contact with a person, or acted with the intent to cause the apprehension of some harmful or offensive contact with a person, and 2) a harmful or offensive contact with a person resulted. Arkansas Model Jury Instructions–Civil, AMI 418 (2014 ed.).

All of these elements can obviously be satisfied by the nonconsensual arrest that Defendant Cross has admitted to in his statement of uncontested facts and accompanying affidavit. These claims should proceed to trial on the limited grounds of damages alone.

V. **Defendant Cross Is Liable as a Matter of Law for the State Tort Claim of Malicious Prosecution.**

The elements of malicious prosecution are: (1) a judicial proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) lack of probable cause on the part of the defendant when instituting the proceeding; (4) malice on the part of the defendant; and (5) injury or damage suffered as a result of the prosecution. § 33:4. Malicious prosecution, 1 Arkansas Law Of Damages § 33:4. McMullen v. McHughes Law Firm, 2015 Ark. 15, 454 S.W.3d 200 (2015); Bank of Eureka Springs v. Evans,

353 Ark. 438, 109 S.W.3d 672 (2003); South Arkansas Petroleum Co. v. Schiesser, 343 Ark. 492, 36 S.W.3d 317 (2001); Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox, 324 Ark. 361, 922 S.W.2d 327 (1996). See Arkansas Model Jury Instructions–Civil, AMI 413 (2014 ed.). See also Ark. Code Ann. 5-53-131 (criminal malicious prosecution). Malicious prosecution occurs when there are no grounds for prosecution, the claim is frivolous, or when the prosecution is being done maliciously and yet the defendant is still prosecuted. Malicious prosecution can be committed by a prosecutor using his position improperly or it can be committed by a plaintiff who intentionally causes a prosecutor to bring malicious, frivolous, or groundless charges against a defendant. 1 Arkansas Law Of Damages § 33:4, infra.

The first element of the tort is a requirement that the judicial proceeding was instituted, or continued, by the defendant against the plaintiff. If the original proceeding was criminal, the defendant must have taken an active role in initiating the criminal prosecution, not merely stated facts to a prosecutor who then independently determined whether to prosecute, but the Defendant must establish they disclosed all pertinent material facts. Id. Second, the plaintiff must establish that the original proceeding terminated in his favor. Id. The third element of malicious prosecution requires the plaintiff to establish that the defendant lacked probable cause in instituting or continuing the proceedings. Id. The court is to consider all information available to the defendant to determine if the defendant exercised ordinary caution in bringing the charges. Ordinary caution is a standard of reasonableness to be judged by the jury, at least when the facts are in dispute or subject to conflicting interpretations. Id. Probable cause for prosecution must be based, objectively, on the existence of facts or credible information that would induce a reasonable person exercising ordinary caution to believe the accused to be guilty or liable. Id. The existence of probable cause is based upon the circumstances and the

information known to the defendant at the time the original proceedings were instituted. Following the jury's determination of any disputed facts, the court then determines whether probable cause existed as a matter of law. The fourth element of the tort of malicious prosecution is malice. Malice exists when an act is done willfully with the intent of causing injury to another. Malice is also defined as "any improper or sinister motive for instituting the suit." Id. Finally, the plaintiff must establish damages. A plaintiff may recover general damages in the form of compensation for the mental strain, emotional distress, embarrassment, humiliation, harm to reputation, and perhaps fear of imprisonment arising from the prosecution. Id., Bank of Eureka Springs v. Evans, 353 Ark. 438, 109 S.W.3d 672 (2003) (compensatory damages of $100,000 and punitive damages of $300,000 affirmed); Yam's Inc. v. Moore, 319 Ark. 111, 890 S.W.2d 246 (1994) (humiliation and embarrassment are part of the mental anguish element of damages); Family Dollar Trucking, Inc. v. Huff, 2015 Ark. App. 574, 474 S.W.3d 100, 166 Lab. Cas. (CCH) P 61645 (2015) (awards of $1.75 million and $1.0 million to employees charged with theft of property); Burkett v. Burkett, 95 Ark. App. 314, 236 S.W.3d 563 (2006) (compensatory damages of $21,600 and punitive damages of $10,000 against former husband affirmed). The plaintiff may also recover special damages. 1 Arkansas Law Of Damages § 33:4, infra. Special damages cover all natural and probable consequences of the malicious prosecution, including loss of time while under arrest or in custody, attorney fees and other reasonable expenses in connection with defense of the prior proceeding, and other out of pocket expenses. Id. Lost wages and business losses may also be claimed. Id. In a malicious prosecution suit for wrongful attachment of property, damages are based on the value of the property during its detention, or if the property was destroyed, for the market value at the time of

the loss. Id. A jury may award punitive damages if the defendant acted willfully and purposely to disregard the plaintiff's rights or deliberately injure the plaintiff. Id.

Defendant Cross meets the elements for malicious prosecution because he wrongfully arrested Mr. Thurairajah and submitted a citation for Disorderly Conduct and thus institution a judicial proceeding against him. The proceeding was terminated in Mr. Thurairajah's favor. As demonstrated above, and because the facts surrounding the arrest are not in dispute, when Defendant Cross arrested Mr. Thurairajah for exercising his First Amendment freedom of speech and no other suspected crimes, Defendant Cross lacked probable cause as a matter of law. Defendant Cross acted with malice because this was a retaliatory arrest against Mr. Thurairajah for Plaintiff's speech. Plaintiff's Exhibit A, at 52, ¶¶ 1-7. And, as a result Mr. Thurairajah suffered damages, both to his person and psyche, not to mention financially. As a result, Plaintiff must succeed on his Motion for Partial Summary Judgment on this ground.

**CONCLUSION**

Defendant Cross's defense of qualified privilege is not viable because his actions were malicious and beyond the scope of his duties. The facts and context in which Defendant Cross acted creates an irrebuttable presumption that the Defendant acted maliciously and in bad-faith for the purpose punishing Mr. Thurairajah for exercising his First Amendment freedom of speech. The only issue left to determine in the State and Federal Civil Rights violations and the State tort claims of False Imprisonment, False Arrest, Assault, Battery, and Malicious Prosecution are the extent of the damages, not whether or not there were any damages. For the above reasons the Plaintiff's Motion for Partial Summary Judgment must be granted.

WHEREFORE, the Plaintiff prays that this Court grant the Plaintiff's Motion for Summary Judgment in its entirety, and for costs and expenses incurred herein, including reasonable attorney's fees, and all further relief to which the Court may deem Plaintiff is entitled.

Respectfully submitted,

Eric Thurairajah, Plaintiff

By: /s/ W. Whitfield Hyman
W. Whitfield Hyman
Attorney for Eric Thurairajah
King Law Group, PLLC
300 N. Sixth Street
Fort Smith, AR 72901
479-782-1125
479-785-1567 Fax
ABA# 2013-237
hyman@arkansaslawking.com

**CERTIFICATE OF SERVICE**

I, W. Whitfield Hyman, hereby certify that on this 29th day of June, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification to any participants.

/s/ W. Whitfield Hyman
W. Whitfield Hyman